## S. LONG & SON v. MICHAEL REGEN.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 1, 1888—Decided March 26, 1888.

The plaintiff sold to the defendants a quantity of ochre, to be prepared for market and delivered at the railway station at a certain price per ton. By a modification of the contract the defendants assumed to prepare and deliver the ochre at the station, but after removal a dispute followed as to the terms of the contract as modified, whether the plaintiff was to be charged the actual cost of preparation and delivery, or a fixed rate per ton to be deducted from the contract price.

The question being one of fact for the jury, under the evidence, and there being evidence that in the preparation of the ochre for market by the defendants they had so treated it that it was impossible to arrive at the weight of the ochre in the condition at the time of sale : *Held,*

That it was not error to admit the testimony of a teamster employed and

his receipts for payments made by the plaintiff for hauling the same body of ochre before the sale of it, as evidence tending to show the quantity sold.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and CLARK, JJ.; TRUNKEY and WILLIAMS, JJ., absent.

No. 274 January Term 1888, Sup. Ct.; court below, No. 5 March Term 1886, C. P.

On February 1, 1886, an action in assumpsit was brought by Michael Regen against Samuel Long and Nicholas Long, trading as S. Long & Son. The declaration was in the common counts.

At the trial on September 26, 1887, it appeared that on April 17, 1885, Regen, of the first part, by a sealed contract with S. Long & Son, of the second part, agreed to " deliver 300 tons of ochre, more or less, now lying at a certain ochre factory at Topton, ground, floated, barreled and delivered on the cars at Topton or Hancock station, inside of three months from the date hereof. In consideration whereof, the said Michael Regen for himself, his heirs and assigns, is to receive in payment nine dollars for every ton of 2000 pounds weight; said payment to be made . . . . . in thirty days after the last shipment of said ochre is made to S. Long & Son." On July 24, 1885, another sealed instrument was executed wherein it was recited that the party of the second part could not fulfil their part of the foregoing agreement, and providing for an extension of time to three months from said date, and also that the price of said ochre was to be reduced to eight dollars instead of nine dollars per ton, as mentioned in the above agreement.

With these papers in evidence, it was admitted that on the day the original contract was executed there were certain parol modifications of it made ; the contention was as to the terms of the contract as so modified. In substance, the plaintiff claimed and offered testimony that the quantity sold was 272 tons ; that he had sold it just as it was at his own mill ; that at his instance the defendants had agreed to and did procure Fritch & Brother to attend to the preparation and delivery of it ; that, as arranged by the defendants, Fritch & Brother were to haul the ochre to their mill, grind, barrel and deliver it on the cars for five dollars per ton to be paid by the defendants,

who were then to pay the plaintiff the balance of the contract price. On the part of the defendants it was claimed and testimony offered to show that after the first written agreement was made, the plaintiff desired the defendants to see to the preparation of the ochre for market, the cost thereof to be deducted from the contract price of the sale to them; that the defendants contracted with Fritch & Brother to do the preparation and delivery at five dollars per ton and so informed the plaintiff; that Fritch & Brother began the preparation of the ochre at that rate, but owing to the fact that it had not been sufficiently floated by the plaintiff were stopped by the defendants; that the defendants were then compelled to take the ochre to their own mills, and prepare it for market by floating, grinding, drying and barreling; that they had it weighed by the railroad company and shipped to market; that there were 132 tons and 1970 pounds, costing the defendants in the aggregate, for the preparation and preparing for market, including the amount they had paid to Fritch & Brother, $1,392.44. The plaintiff's claim, under the reduced contract price, was for 272 tons at three dollars per ton—$816.

Oliver Sitler, called for the plaintiff, identified certain receipts signed by witness to the plaintiff for payments for hauling ochre from the mine in February and March, 1885:

The plaintiff's counsel propose to prove by this witness and others that there was lying at a certain ochre factory at Topton in April, 1885, about 272 tons of ochre hauled there by this witness and others for Michael Regen, some time prior to April, 1885, it being the same ochre that was sold to the defendants and referred to in the agreement already in evidence.

The offer is objected to by the defendants' counsel, because it is immaterial and irrelevant, the plaintiff himself having sworn that the payment for the ochre per ton was to be made based upon the weight after the ochre was prepared, ready for shipment, and the weight was to be ascertained at the railroad depot after the preparation. The number of tons hauled from the mine in the state it was before preparation, would in no way be a guide to its weight after having been prepared and ready for shipment at the factory of the defendants. Further, that the ochre at the mine, taken in a wet state, will weigh a third or more than it will when floated, ground, dried and ready for shipment.

By the court: Objection overruled and evidence admitted.[1]

The plaintiff's counsel offered in evidence the receipts identified by the witness Sitler, which offer was objected to.

By the court: The receipts are admitted as covered by the objection to the former offer.[2]

The court, ERMENTROUT, J., charged the jury as follows:

There is considerable dispute as to the testimony in this case, but it is the duty of the jury to reconcile the conflicting facts. Michael Regen comes into court and says he has a claim against S. Long & Son for ochre which was sold to them under a certain contract, which he submits to the jury. The terms of this contract, he alleges, are found partly in writing and partly by word of mouth. He says that on April 17, 1885, he entered into articles of agreement with S. Long & Son, and that agreement was that Michael Regen will deliver 300 tons more or less of ochre, now lying at a certain ochre factory at Topton, ground, floated, barreled, and delivered on the cars at Topton or Hancock station inside of three months from the date hereof, and in consideration whereof the said Michael Regen was to receive $9.00 for every ton of 2000 pounds, this payment to be made thirty days after the last shipment of ochre is made to said Samuel Long & Son. He tells you that after that agreement was made in writing, he had a conversation with the defendants through Nicholas Long, who represented them, and that there were certain changes made in the agreement, and he says he asked Long if he would see Fritch & Brother who were carrying on an ochre factory and have them attend to the business of preparing this ochre for the market; that he saw Long; that Long told Regen that he had made an arrangement to have it done for $5 a ton; that this $5 was to cover everything that was necessary to be done to prepare this ochre for the market. Subsequent to that, Mr. Long came to the plaintiff and said that he was unable to comply with this contract, and he said he had done nothing with it. He told Mr. Long he had offers for the ore; he was offered $8 a ton for it and wanted more time. Long said he would give him an extension of time; he said it was worth more than $8 a ton to prepare it; that thereupon he extended the terms of this contract for three months longer, and the

price of the ochre was reduced to $8 instead of $9 a ton. So that, under Mr. Regen's statement and this agreement, the price that the Longs were to pay for this ochre was $8 per ton; and the agreement, he alleges, made with Long was that the $5 was to pay the whole cost of the subsequent preparation for shipment. [Now, gentlemen, if that contract is the correct one, then if the ochre was $8 a ton, including the preparation of it for the market, as specified in this agreement, and the cost of that preparation which Long assumed was $5, the plaintiff would be entitled to the difference between the $8 and the $5, or $3 a ton for every ton that was delivered under this agreement. If that view of the case be taken, the plaintiff says that there were delivered 272 tons of ochre, which at $3 a ton amounts to $816. He makes up his estimate of the quantity by taking the receipts which were given at the time the ochre was hauled away from Regen's ochre place. An addition of the various amounts of ochre hauled away by these different teams at $3 a ton would amount to $816, and the plaintiff asks you to find under his theory of the case that he is entitled to a verdict for the sum of $816, with interest from the 24th day of November, 1885.] [3] [Now, in the consideration of the testimony as given by the plaintiff, you will consider what number of tons of ochre was delivered under the agreement, and the evidence is that the weight of the ochre was ascertained just as the ochre lay there at the ochre factory of Mr. Regen. There is some testimony to the effect that the ochre was damp, and that by reason of this dampness or moist condition at that time, that when the ochre was ground, barreled and put in shape for shipment, there was a loss of weight; because the ochre that was to be barreled, was necessarily to be barreled in a proper condition. Now, in this cause, so far as the court can ascertain, the proportion which ochre is supposed to lose in the process of drying, grinding and barreling was not ascertained; and it is for the jury to find whether under this contract the weight of the 272 tons of ochre was diminished, and if so, to what extent. And if the theory of the plaintiff be correct, for whatever number of tons of ochre the jury should find of the nature and character delivered under this contract or agreement, whatever that amount shall be, you multiply that amount by $3 a ton, and the verdict

will be for that amount with interest from the 24th of November, 1885.] [4]

The plaintiff says that the ore or ochre was floated just as it lay at the ochre factory.   You have heard the testimony given as to the nature and character of this floating; that when the clay, called ochre or ore, or whatever you choose to call it, is dug out of the ground, it is mixed with water, and the heavy particles of this ore, whatever it may consist of, stone and flint substances and so forth, in that ochre, fall down, the ochre floating on the top of the water, and that is floated off into a place where the ochre on the top of the water can settle, and the water being drawn off, that forms what I understand in this case to be the first floating of ochre.   And the plaintiff contends that all he was required to furnish was this first floated ochre.   There is nothing said in this agreement as to whether the ochre shall be a first float or a second float.   There is some discrepancy with regard to this agreement.   If the written agreement stood by itself, it would call on Michael Regen to deliver 300 tons of the ochre lying there at the ochre factory at Topton, to be ground, floated and barreled and delivered. According to Regen's interpretation of this agreement it was otherwise; he says there was nothing said about the floating. When Long was upon the stand he contended that it had been represented as floated already.   Now, if these representations were made, or if this was floated already, and the parties understood it to mean that kind of floating, then the jury will ascertain the quantity or number of tons.   I may also say here that this ochre in any theory of the case was to be delivered on the cars, and the evidence is that the weight was to be determined as of the weight at the cars.   You will take that into consideration and ascertain under the rules I have given what the weight of the ochre delivered at the cars, under the plaintiff's interpretation of the agreement, was, that he is contending for in his testimony, and render your verdict accordingly.

Now the defendants come into court, and say that they were deceived in the matter of floating; that it was represented to them that the ochre had already been floated, and that it became necessary subsequently to refloat it; he says it had not been floated at all.   I believe Mr. Weiler said it had not been floated at all, but Mr. Romig, who was called by the defendant,

says it had been floated, and he designated this as the first floating of ochre. Now, if this ochre was to be refloated, and its weight was subsequently determined at the cars, the weight of that ochre thus refloated, according to the evidence in this cause, as given by Long and one of the other witnesses, was about 133 tons, or 132 tons and 1,970 pounds weight; we call it 133 tons; and if that was the real weight, and should be accepted as such, as the real weight at the place of shipment under the plaintiff's interpretation of his contract, then the net price he would be entitled to would be 133 times $3.00, or $399.00 with interest from November 24th, 1885. But the defence go further than that; they claim that it was necessary to refloat it; that that was a part of the contract; that, instead of being limited to $5.00 as the cost per ton under this agreement, the actual agreement made between Regen and Long was that Long should assume the preparation, and the barreling, and the hauling, and the delivery for shipment, and whatever it cost, that that Regen was to pay. And the defendants contend that the cost of re-preparing this ochre for market, hauling and refloating and so forth, amounted to $1,392.06, and that, inasmuch as under their contract they were to pay to the plaintiff only $8.00 a ton, or the sum of $1,063.88, that it actually cost them $328.18 more than they contracted to pay Regen. In other words, that the defendants were out of pocket in the transaction, and that the defendants would, in strict point of law, be entitled to a verdict for $328.18. But they do not in this suit ask for a verdict of $328.18, but simply for the defendants generally. If that were the contract, then your verdict would be for the defendants generally. In the consideration of this case you will take into account everything that has been said by these parties, by these witnesses. There is considerable contradiction in the evidence; that the jury will endeavor to reconcile as best they can. . . . . .

The verdict of the jury was for the plaintiff for $819.60. A new trial having been refused and judgment entered, the defendants took this writ assigning for error:

1, 2. The admission of the plaintiff's offers. [1] [2]

3, 4. The parts of the charge embraced in [ ][3] [4]

*Mr. J. H. Jacob* (with him *Mr. D. N. Schaeffer*), for the plaintiffs in error:

By the language of the agreement, the number of tons was given simply to designate or identify the place and body of the ore sold. No idea of any definite number of tons was intended. The number of tons was to be ascertained at the shipping point, after the ochre had been floated, dried, ground and barreled. And it was admitted by the plaintiff on cross examination, that the weight was to be ascertained by the railroad weight after it was delivered. It was therefore error to suffer the jury to find the weight of the ochre delivered, from the testimony of Sitler and the receipts in evidence.

*Mr. Jeff. Snyder* (with him *Mr. F. K. Flood*), for the defendant in error:

The defendants took upon themselves the burden of preparation and delivery, and, unlawfully and unfairly treating and refining the ore for their own benefit, so wasted and reduced its bulk as to render it impossible to ascertain how much there would have been delivered if they had fairly carried out the contract. This entitled us to show by the best evidence we could get, how much of the plaintiff's ore he obtained.

OPINION, MR. JUSTICE CLARK:

The contract in this case, as originally made, was for the sale and delivery by Regen to S. Long & Son, of "three hundred tons of ochre, more or less, now lying at a certain ochre factory at Topton," etc.; the ochre was to be "ground, floated, barreled, and delivered on the cars at Topton or Hancock station, inside of three months," etc.; Long & Son to pay at the rate of $9.00 per ton. The contract was afterwards amended, by extending the time for its fulfillment for three months from July 24, 1885, and reducing the price from $9 to $8 per ton. The provisions of the contract were further altered by parol, in this, that S. Long & Son undertook to prepare the ochre for market; they made a contract with Fritch & Brother to do the work at $5 per ton and Regen had no further care in its preparation. The plaintiff alleges, that Long & Son undertook this preparation of the ochre at $5 per ton, according to their contract with Fritch & Brother, and agreed to pay to him the remaining $3; the defendants allege, however, that Long & Son were to deduct the actual expense, whatever that might be, from the $8 per ton and pay Regen the balance.

Fritch & Brother did prepare 62 tons for market, when they were stopped by Long & Son, who said the ochre was too gritty, and would have to be refloated. Long & Son thereupon refloated the whole lot, including that ground and barreled by Fritch & Brother. The plaintiff testifies that the ochre had already been floated, that he sold it as it was—"just as it stood"—and that it simply remained for him to grind, barrel and deliver it on the cars. The defendants, not specifically denying this, say that Regen represented the ochre to have been already sufficiently floated, which proved to be untrue; that they were obliged to refloat all of it, and that the weight, by the removal of the impurities, was greatly reduced.

There was evidence to show, that all the ochre at Topton was removed by Long & Son, and the plaintiff claimed that it weighed 272 tons, and that he is entitled to recover at the rate of $3 per ton. The defendants maintained, however, that when the ochre was refloated and prepared for market, there was only about 133 tons, and that the expense of preparation was so great as to much more than cover the whole price.

At the trial, the plaintiff proposed to prove the amount of ochre at Topton, by the persons who hauled it there; this was objected to, upon the ground that the ochre, at the time it was delivered at Topton, was wet or damp, and that its weight in that condition would furnish no evidence of its weight when prepared for market; and further, that as the plaintiff had admitted in his testimony that the weight, at the time of shipment, was to be accepted by the parties, the evidence offered was immaterial. To this the plaintiff replied, however, that in the respect of its purity, he sold the ochre "just as it stood;" that in refloating it, much of the material was lost; that the defendants, by this process, had obtained a finer and a purer article than he agreed to sell; and that therefore the weight at the time of shipment furnished no proof of the weight of the ochre covered by his contract.

In this condition of the case, we cannot see how the court could have excluded the evidence, contained in the offer; for, if the plaintiff's allegations were true, the defendants had destroyed all means of proof of the real quantity of ochre, embraced in the sale; and, whilst the evidence of its weight at the time it was hauled to Topton might not be accurate, it was

certainly proper for the consideration of the jurors, in the event of their adopting the plaintiff's theory of the case, in approximating its proper weight. On this branch of the case, the learned court instructed the jury, in the plainest manner, that there was evidence that the ochre was damp and moist, when delivered at Topton, and that, as it was of course to be barreled in proper condition, it was for the jury to determine to what extent its weight would be diminished when dry; on the other hand, if they accepted the defendants' theory of the case, then as the ochre had to be refloated, its weight at the place of shipment must be taken, and they should find their verdict accordingly. The testimony was contradictory. The veracity of the witnesses, and the conflict in the evidence was for the jury, and they were entitled to hear the evidence bearing upon both sides of the case, in order that, as they might adopt one theory or the other, they would be able to estimate the weight of the ochre.

If the plaintiff's contention were the correct one, the defendants had made it difficult to determine the weight, and, although when delivered at Topton, it may have been damp or moist, the plaintiff, under the circumstances, had a right to show what its weight in that condition was ; it was not more difficult, perhaps, to estimate how much weight was added by the moisture, than to say how much was lost by the process of refloating. It was for the jury, from this and all the other evidence in the cause, to determine, approximately, its true weight when dry.

The receipts which were offered in evidence were used by the witness to refresh his recollection ; after reading them, he said that he hauled ochre and deposited it at Topton, to the extent or amount specified therein, and the receipts were read simply as a statement prepared by the witness, fixing the several quantities delivered at the dates designated respectively. The testimony was of the most conflicting character, and it was for the jury to find the facts. Upon an examination of the whole case, it would seem to have been fairly submitted; if the defendant has been wronged, it is because he failed to satisfy the jury.

The judgment is affirmed.